**MARATHON OIL CO., Relator,**

v.

**The Honorable Eric V. MOYÉ, Judge Presiding 101st District Court of Dallas County, Texas, Respondent.**

No. 05–94–00040–CV.

Court of Appeals of Texas, Dallas.

Dec. 12, 1994.

Clifton T. Hutchinson, Darrell E. Jordan, Mark K. Sales, Dallas, TX, for appellant.

Michael Lowenberg, Dallas, TX, for appellee.

Before BAKER; LAGARDE and MALONEY, JJ.

## OPINION ON MOTION
## FOR REHEARING

BAKER, Justice.

We withdraw our opinion of August 16, 1994, and the conditional grant of Relator's petition for writ of mandamus issued on August 16, 1994. The following is now the Court's opinion.

Marathon Oil Co. challenges a discovery order entered by respondent requiring the production of documents. Marathon claims privilege under the attorney-client privilege or the attorney work product exemption from discovery. We agree with Marathon. The trial court abused its discretion in rejecting Marathon's claim of privilege. We conditionally grant the writ.

### THE DISCOVERY DISPUTE

St. Clair–Urdaneta, Inc. assigned Colombian coal licenses to Marathon under a binding letter of intent. St. Clair received payment and a nonparticipating royalty interest in exchange for the licenses. St. Clair sued Marathon alleging breach of the letter of intent. St. Clair claimed Marathon breached its contractual duty to use its best efforts in maintaining the coal licenses in good standing when the Colombian government nationalized the domestic coal industry. St. Clair sought damages for loss of royalties because Marathon gave up the coal licenses that St. Clair had transferred to Marathon.

St. Clair sought production of documents from Marathon and filed motions to compel. Marathon produced some documents and asserted privilege to others. Marathon submitted a privilege log identifying 914 documents. Marathon also submitted affidavits from two of its attorneys. The trial court conducted an *in camera* inspection of these documents. After its inspection, the trial court ordered Marathon to produce 759 of the 914 documents. In some instances, the trial court found documents privileged, but denied privilege to their duplicates. The trial court did not state the reason for ordering the documents produced.

Marathon contends the trial court improperly ordered production of privileged documents because St. Clair did not refute Mara-

thon's *prima facie* showing of privilege. St. Clair contests Marathon's privilege and, alternatively, contends Marathon waived any claim of privilege.

## APPLICABLE LAW

### A. Standard of Review

■ For mandamus to issue, the trial court must commit a clear abuse of discretion, and the relator must not have an adequate remedy at law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding); *Kavanaugh v. Perkins,* 838 S.W.2d 616, 618 (Tex.App.—Dallas 1992, orig. proceeding). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present a proper case for the trial court's action. Rather, the question is whether the court acted without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

■ When a trial court's interpretation of discovery law is at issue, we treat the trial court's order as a legal conclusion. We review the legal conclusion with limited deference to the trial court. *See Walker,* 827 S.W.2d at 840. The trial court has no discretion to determine the law or to apply the law to the facts incorrectly. *Methodist Home v. Marshall,* 830 S.W.2d 220, 223 (Tex.App.—Dallas 1992, orig. proceeding). A clear failure by the trial court to analyze or apply the law correctly is an abuse of discretion. *Walker,* 827 S.W.2d at 840.

■ Mandamus will not issue when there is an adequate remedy at law. *Walker,* 827 S.W.2d at 840; *Reveal v. West,* 764 S.W.2d 8, 10 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding). A party does not have an adequate remedy at law when an appellate court cannot cure the trial court's erroneous discovery order. *Walker,* 827 S.W.2d at 843. An appellate court cannot cure the error when a trial court erroneously orders disclosure of privileged information that materially affects the rights of the aggrieved party. *Walker,* 827 S.W.2d at 843. When a trial court erroneously orders production of documents covered by the attor-

ney-client privilege, there is no adequate remedy at law for the aggrieved party. *See West v. Solito,* 563 S.W.2d 240, 244 (Tex. 1978) (orig. proceeding).

### B. Privilege

#### 1. Attorney–Client

■ Rule 503 precludes discovery of the confidential communications made between client and attorney. Tex.R.Civ.Evid. 503. This privilege attaches to the complete communication between attorney and client. *GAF Corp. v. Caldwell,* 839 S.W.2d 149, 151 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding). The subject matter of the information communicated between attorney and client is irrelevant when determining whether the privilege applies. *Keene Corp. v. Caldwell,* 840 S.W.2d 715, 720 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding). Privilege attaches to legal advice and factual information included in completed communications between attorney and client. *Pittsburgh Corning Corp. v. Caldwell,* 861 S.W.2d 423, 425 (Tex.App.—Houston [14th Dist.] 1993, orig. proceeding); *GAF Corp.,* 839 S.W.2d at 151.

#### 2. Work Product

■ Rule 166b(3)(a) precludes discovery of an attorney's work product. Tex.R.Civ.P. 166b(3)(a). The work product exemption shields the attorney's mental processes, conclusions, and legal theories. The exemption provides a privileged area within which the attorney can analyze and prepare the case. *Owens–Corning Fiberglas Corp. v. Caldwell,* 818 S.W.2d 749, 750 (Tex.1991) (orig. proceeding). The exemption extends not only to documents the attorney generates, but also to memoranda, reports, notes or summaries of interviews, etc. prepared by other persons for an attorney's use. Tex.R.Civ.P. 166b (3)(a); *GAF Corp.,* 839 S.W.2d at 151.

#### 3. Burden of Proof

To show a privilege, a party must plead the particular privilege, produce evidence to support the privilege through affidavits or testimony, and produce documents if the trial court determines that an *in camera* review is

necessary. *See* TEX.R.CIV.P. 166b(4); *Peeples v. Fourth Supreme Judicial District,* 701 S.W.2d 635, 637 (Tex.1985) (orig. proceeding).

### 4. *In Camera* Inspection

■ Often the allegedly privileged documents may be the only evidence substantiating the privilege claim. *Weisel Enters., Inc. v. Curry,* 718 S.W.2d 56, 58 (Tex.1986) (orig. proceeding). If the allegedly privileged documents are the only evidence to show the privilege, a party must produce the documents for an *in camera* inspection. *Kavanaugh,* 838 S.W.2d at 620.

■ When a party satisfies the procedural requirements for privilege and tenders the documents to the trial court, the trial court must conduct an *in camera* inspection. *Shell W. E & P, Inc. v. Oliver,* 751 S.W.2d 195, 197 (Tex.App.—Dallas 1988, orig. proceeding). The trial court determines whether the privilege applies to the tendered documents during an *in camera* inspection. As a reviewing court, we may conduct our own *in camera* inspection to determine whether a trial court properly applied the law of privilege to the documents. *Barnes v. Whittington,* 751 S.W.2d 493, 495 (Tex.1988) (orig. proceeding).

### C. Waiver of Privilege

#### 1. Offensive Use

■ A person cannot claim privilege to pertinent evidentiary information while he simultaneously seeks affirmative relief. *Republic Ins. Co. v. Davis,* 856 S.W.2d 158, 163 (Tex.1993) (orig. proceeding); *Ginsberg v. Fifth Court of Appeals,* 686 S.W.2d 105, 107 (Tex.1985) (orig. proceeding). When a party uses the privilege as a sword rather than a shield, he waives the privilege. *Davis,* 856 S.W.2d at 163. Waiver based on offensive use of a privilege applies to confidential attorney-client communications. *Davis,* 856 S.W.2d at 164. Waiver based on offensive use of a privilege also applies to the attorney work product exemption. *See Owens–Corning Fiberglas Corp.,* 818 S.W.2d at 752.

■ To find a waiver of the privilege through offensive use, the trial court must find three factors exist. First, the trial court must find the party asserting the privilege is seeking affirmative relief. Second, the trial court must find the privileged information, if believed by the fact finder, would probably be outcome determinative. Third, the trial court must find disclosure of the privileged communication is the aggrieved party's only means of access to the evidence. *TransAmerican Natural Gas Corp. v. Flores,* 870 S.W.2d 10, 11–12 (Tex.1994); *Davis,* 856 S.W.2d at 163.

■ A defendant raising a declaratory judgment counterclaim is not necessarily seeking affirmative relief. *Davis,* 856 S.W.2d at 164. The declaratory judgment act is remedial in nature. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 37.002(a) (Vernon 1986). The declaratory judgment act may not be used as an affirmative ground of recovery to revise or alter rights or legal relations. *Davis,* 856 S.W.2d at 164. When a defendant relies on privileged information to rebut a plaintiff's cause of action, the defendant is not seeking affirmative relief that is an offensive use of the privilege. *National Union Fire Ins. Co. v. Valdez,* 863 S.W.2d 458, 461 (Tex.1993) (orig. proceeding).

#### 2. Voluntary Disclosure

■ A person waives privilege if he voluntarily discloses any significant part of the privileged material. TEX.R.CIV.EVID. 511. Disclosure of privileged documents can result in an implied waiver of the privilege to other documents. *Terrell State Hosp. v. Ashworth,* 794 S.W.2d 937, 941 (Tex.App.—Dallas 1990, orig. proceeding [leave denied] ). However, this waiver does not automatically allow disclosure of all privileged materials. *National Union Fire Ins. Co. v. Hoffman,* 746 S.W.2d 305, 311 (Tex.App.—Dallas 1988, orig. proceeding).

### D. Fiduciary Relationships

A fiduciary relationship is a formal, technical relationship of confidence and trust that imposes upon a fiduciary greater duties as a matter of law. *Central Sav. & Loan v. Stemmons N.W. Bank, N.A.,* 848 S.W.2d 232, 243 (Tex.App.—Dallas 1992, no writ). The duty

arises from the relationship of the parties. *English v. Fischer*, 660 S.W.2d 521, 524–25 (Tex.1983) (Spears, J., concurring). The confidential or fiduciary relationship arises from such relationships as attorney-client, partnership, trustee-cestui que trust, and from informal social, moral, or personal relationships. *Central Sav. & Loan*, 848 S.W.2d at 243.

■■■ A mere contractual relationship reserving a nonparticipatory royalty interest will not create a fiduciary relationship between the parties. *Pickens v. Hope*, 764 S.W.2d 256, 268 (Tex.App.—San Antonio 1988, writ denied). The fact that a royalty interest owner is dependent upon the executive interest holder to manage the mineral estate in good faith does not of itself create a special relationship of trust and confidence. *Pickens*, 764 S.W.2d at 268. Unless the lease document itself creates a legally binding trust, or unless a relationship of trust and confidence necessarily results from the lessor-lessee relationship, the standard of conduct of the lessee cannot be appropriately categorized as fiduciary. *Pickens*, 764 S.W.2d at 268. However, when the executive and nonexecutive are cotenants in the mineral estate and there is a relationship of trust and confidence, a fiduciary relationship exists between the executive and nonexecutive interest holders. *Pickens*, 764 S.W.2d at 267 (discussing *Manges v. Guerra*, 673 S.W.2d 180 (Tex.1984)).

■■■ To determine whether a fiduciary relationship exists, the focus is on whether there is a relationship of trust and confidence. *Pickens*, 764 S.W.2d at 268. The party claiming a fiduciary duty has the burden of proving a fiduciary relationship exists. *Consolidated Bearing & Supply Co., Inc. v. First Nat'l Bank*, 720 S.W.2d 647, 648 (Tex. App.—Amarillo 1986, no writ). Whether a fiduciary duty exists is a question of law. *See Central Sav. & Loan*, 848 S.W.2d at 243.

### E. Joint Representation/Direct or Third–Party Beneficiary

■■■ The attorney-client privilege does not apply to a communication relevant to a matter of common interest between or among two or more clients if the communication was made by any of the clients to a lawyer retained or consulted in common, when offered in an action between or among any of the clients. *See* Tex.R.Civ.Evid. 503(d)(5). In the absence of privity of contract, an attorney owes no duty to a third party. *See First Mun. Leasing Corp. v. Blankenship, Potts, Aikman, Hagin & Stewart*, 648 S.W.2d 410, 413 (Tex.App.—Dallas 1983, writ ref'd n.r.e.).

### APPLICATION OF THE LAW TO THE FACTS

#### A. Prima Facie Claim of Privilege

Marathon satisfied the elements of a *prima facie* claim of privilege. Marathon pleaded privilege under the attorney-client privilege and work product exemption. Marathon submitted affidavits from its attorneys and a detailed privilege log to support the privilege claim. The log identified the documents and the privileges asserted to each of them. Finally, Marathon tendered the documents for the trial court's *in camera* review. Because Marathon made a *prima facie* case, the burden shifted to St. Clair to refute the privilege claim.

#### B. Documents Relate Only to Business Activities

■■■ St. Clair contested the privilege claim by arguing the documents sought related only to Marathon's business activities. Thus, St. Clair argues Marathon cannot claim privilege over the documents in dispute. However, St. Clair fails to recognize the subject matter of a completed attorney-client communication is immaterial when deciding if the privilege applies. *See Keene Corp.*, 840 S.W.2d at 720; *GAF Corp.*, 839 S.W.2d at 151. The conclusion that communications between Marathon and its attorneys concerned business activity is not determinative. St. Clair did not rebut Marathon's *prima facie* showing of privilege by alleging the communications related only to business activities.

#### C. Waiver

■■■ Alternatively, St. Clair argues Marathon waived any privilege or exemption.

First, St. Clair argues Marathon is using the privilege offensively. A claim for affirmative relief is an essential element of the offensive use waiver. St. Clair argues Marathon seeks affirmative relief by raising affirmative defenses. St. Clair cites *National Union Fire Insurance Co. v. Valdez* to support its argument. St. Clair misreads *Valdez*. *Valdez* does not hold that an assertion of affirmative defenses is a claim for affirmative relief. *See Valdez*, 863 S.W.2d at 461. In fact, *Valdez* points out that National Union did not assert an affirmative defense. *See Valdez*, 863 S.W.2d at 461. St. Clair cites no other authority to support its assertion. The facts here do not show Marathon sought affirmative relief. Waiver based on offensive use of a privilege does not apply.

## D. Fiduciary Duty

Second, St. Clair contends Marathon owed St. Clair a fiduciary duty, which prevented Marathon from asserting privilege against St. Clair. St. Clair argues Marathon and St. Clair were in a special relationship because Marathon represented St. Clair's property interests in negotiations and litigation in Colombia. St. Clair also argues the letter of intent created a relationship analogous to the relationship between an executive interest holder and a nonexecutive interest holder in the oil and gas context.

Marathon and St. Clair entered into a binding letter of intent requiring Marathon to form a joint venture with a third party to develop the Colombian coal licenses. The letter of intent provided Marathon would make cash payments to St. Clair in consideration of St. Clair's assignment of its Colombian coal licenses. St. Clair also received a nonparticipatory royalty interest in coal sold under the licenses in consideration of the assignment. The contractual relationship reserving a nonparticipatory royalty interest in St. Clair did not create a fiduciary duty. *See Pickens*, 764 S.W.2d at 268.

St. Clair relies on *Manges* to argue that Marathon owed St. Clair a fiduciary duty. However, under the undisputed facts here, *Manges* does not apply. In *Manges*, the executive and nonexecutive were cotenants in a mineral estate. Also, the court found a relationship of trust and confidence between the parties, which created a fiduciary relationship. *Manges*, 673 S.W.2d at 184.

Here, there is no cotenancy in a property interest, only assignment of licenses with a reservation of a nonparticipating royalty interest. Also, St. Clair produced no other evidence to show a relationship of trust and confidence between it and Marathon. The relationship between the parties in *Pickens* more accurately characterizes the relationship between Marathon and St. Clair. Neither the contract nor Marathon's control over the licenses created a fiduciary relationship under the undisputed facts of this case. We find, as a matter of law, that St. Clair did not prove a fiduciary relationship existed between Marathon and St. Clair.

## E. Voluntary Disclosure

Third, St. Clair argues Marathon impliedly waived privilege when Marathon produced other privileged documents in a previous lawsuit. However, an implied waiver is not an automatic, blanket waiver of the privilege for all underlying documents. *See Hoffman*, 746 S.W.2d at 311. St. Clair does not relate the documents produced to those shielded under Marathon's privilege claim. St. Clair makes only a general statement alleging the documents previously produced cover a broad range of subject matters and the contested documents cover the same matter. We hold such a general allegation of implied waiver of privilege does not defeat a *prima facie* showing of privilege.

## F. Joint Representation/Direct or Third–Party Beneficiary

St. Clair argues the documents Marathon generated are discoverable because Marathon generated them in the course of a joint representation of Marathon's and St. Clair's interest. St. Clair also argues it was a direct or third-party beneficiary of the legal services Marathon's attorneys furnished Marathon under the provisions of the binding letter of intent. These arguments are without merit.

To set aside the attorney-client privilege of the documents St. Clair asserts are discover-

able, the record must show the communications were relevant to a matter of common interest among two or more clients and the communication was made by any of the clients to a lawyer retained in common or consulted in common. There is nothing in the record to show St. Clair and Marathon each retained Marathon's attorneys as their common attorneys. Nor is there anything in the record to show consultation by Marathon and St. Clair in common with Marathon's attorneys. There is nothing in the record to show an agreement for Marathon's attorneys to render legal services to St. Clair. To the contrary, the record shows that St. Clair and Marathon each had its own attorneys in negotiations leading up to the binding letter of intent. We conclude St. Clair's arguments of joint representation or direct contractual duty do not withstand scrutiny. *See* TEX. R.CIV.EVID. 503(d)(5); *First Mun. Leasing Corp.*, 648 S.W.2d at 413.

Additionally, St. Clair's third-party beneficiary of the legal services argument is without merit. The binding letter of intent does not show St. Clair and Marathon intended, either expressly or impliedly, that St. Clair was a third-party beneficiary of the legal services rendered by Marathon's attorneys. We find, as a matter of law, St. Clair did not prove joint relationship or a direct or third-party beneficiary relationship so it defeated Marathon's prima facie showing of privilege.

### G. Appellate *In Camera* Inspection

Finally, St. Clair contends the trial court based its order on an *in camera* factual determination, which bars review by this court. As a reviewing court, we may conduct our own *in camera* inspection to determine whether a trial court properly applied the law of privilege to the documents. *Barnes*, 751 S.W.2d at 495. St. Clair's contention is without merit.

We have conducted an *in camera* inspection of the documents. As a result of our inspection, we find Marathon must produce only ten documents. Six of the documents

are not subject to privilege either under the attorney work product exemption or the attorney-client privilege.[1] We find the privilege and exemption do not apply because we cannot determine whether an attorney participated in the communications. Additionally, Marathon did not submit four of the documents identified in the privilege log.[2] Marathon has waived privilege on those four documents. *See Freeman v. Bianchi*, 820 S.W.2d 853, 858 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding).

### CONCLUSION

The trial court abused its discretion by ordering Marathon to produce the contested documents except for the ten documents previously mentioned. Marathon did not have an adequate remedy at law because the trial court erroneously ordered discovery of privileged documents. *Kavanaugh*, 838 S.W.2d at 619. We direct the Honorable Eric Moyé of the 101st District Court, Dallas County, Texas to vacate his order requiring Marathon to produce all contested documents except for the ten documents identified in our order. We assume the respondent will follow the directions contained in this opinion. The writ will issue only if he fails to do so. We conditionally grant the writ.

---

1. The bates numbers for these six documents are: (1) PMIOC 001197–1198; (2) PMIOC 001244; (3) PMIOC 002776–2777; (4) PMIOC 003439; (5) PMIOC 003488; and (6) PMIOC 003743.

2. The bates numbers for these four documents are: (1) PMIOC 000623; (2) PMIOC 000630; (3) PMIOC 000631–632; and (4) PMIOC 002216.