

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-09-351-CV**

IN RE HARCO NATIONAL                                               RELATOR
INSURANCE COMPANY

------------

ORIGINAL PROCEEDING

------------

## **MEMORANDUM OPINION**[1]

------------

Relator, Harco National Insurance Company, seeks a writ of mandamus against Respondent, the Honorable Jeff Walker, Judge of the 96th District Court of Tarrant County. For the reasons that follow, we conditionally grant relief.

**Factual Background**

On October 3, 2007, Real Party in Interest Debra Fisher brought suit against Harco and several other defendants for fraud and fraudulent inducement arising out of the nondisclosure of insurance coverage in a prior negligence case between Fisher and Southwest International Trucks, Inc. and its employee/driver Clifford George Steece, Sr. In her suit, Fisher asserted that the defendants fraudulently induced her to enter into a settlement agreement settling all her claims for damage in the prior suit. On May 5, 2008,

------------

[1] *See* Tex. R. App. P. 47.4.

Fisher served Harco with a notice of intention to take oral deposition of the corporate representative of Harco, which included a document request seeking the production of:

> [a]ny writings, letter, memorandums, emails, or other documents whether manually created or electronically created, in your possession, from any source, including but not limited to, Southwest International Trucks, Inc., Charles Shriver, II, Hermes Sargent Bates, L.L.P., Harco National Insurance Company, Southern County Mutual Insurance Company, and Republic Lloyds, Inc., relating to the claim of Debra Fisher for injuries and damages against Southwest International Trucks, Inc., or other insurers to include documents whether generated by you or received by you, from any source, including electronic or email communications that refer, mentions, states, or otherwise alleges to insurance coverage of Southwest International Trucks, Inc., resulting from an automobile accident, whether the source be primary, secondary, umbrella or any other insurance coverage.

On May 12, 2008, Harco filed a motion to quash the deposition notice, and the deposition was automatically stayed. On May 27, 2008, Fisher rescheduled the deposition and again included the document request. On June 2, 2008, Harco filed a motion for protective order, contending that the document requests were overly broad and that they sought to invade the attorney-client and attorney work product privileges. The trial court conducted an evidentiary hearing on the motion for protective order on October 2, 2008. At the conclusion of the evidentiary hearing, Harco submitted the documents listed on its privilege log to the trial court for an in camera inspection.

On March 11, 2009, the trial court sent the parties correspondence, stating that Harco's documents generally fell within the attorney-client and work product privileges; however, it had determined that a large number of the documents fell within exceptions found within Rule 503(d)(1), (3), and (5) of the rules of evidence. *See* Tex. R. Evid. 503(d)(1), (3), (5). On March 25, 2009, Harco's counsel sent correspondence to the trial court asking the court to refrain from producing the documents to Fisher until Harco had

an opportunity to consider its options. On April 27, 2009, Harco's counsel received correspondence from Fisher's counsel forwarding a proposed order to the trial court. On May 1, 2009, Harco's counsel sent Fisher's counsel correspondence objecting to the proposed order. On September 2, 2009, Harco's counsel received a copy of correspondence from Fisher's counsel submitting a proposed order to the trial court. On that same day, Harco's counsel sent correspondence to the trial court objecting to the form of the proposed order and asking the trial court to refrain from signing the order or producing the documents until the matter could be heard by the trial court.

On September 10, 2009, the trial court signed and entered an order in which it found that all of the documents that had been presented by Harco were discoverable except those specifically enumerated in the order. Upon receipt of the trial court's order on September 14, 2009, Harco sent correspondence to the trial court asking the court to refrain from producing the documents to allow Harco the opportunity to preserve the court's record and protect its rights by filing a petition for writ of mandamus. On September 17, 2009, the trial court released documents to the parties.

On September 25, 2009, the trial court sent the parties correspondence stating that two additional documents (Harco 00264 and Harco 00442) were also discoverable and providing copies of those two documents to Fisher's counsel. Harco then filed this mandamus proceeding.

**Standard of Review**

Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal. *In re Colonial Pipeline*

3

*Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). When determining whether the trial court abused its discretion, we are mindful that the purpose of discovery is to seek the truth so that disputes may be decided by what the facts reveal, not by what facts are concealed. *Colonial Pipeline*, 968 S.W.2d at 941. The rules governing discovery do not require as a prerequisite to discovery that the information sought be admissible evidence; it is enough that the information appears reasonably calculated to lead to the discovery of admissible evidence. *See* Tex. R. Civ. P. 192.3(a). But this broad grant is limited by the legitimate interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information. *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding).

Appellate courts will not intervene to control incidental trial court rulings when an adequate remedy by appeal exists. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding); *Walker*, 827 S.W.2d at 840. A party will not have an adequate remedy by appeal (1) when the appellate court would not be able to cure the trial court's discovery error, (2) when the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error, or (3) when the trial court disallows discovery and the missing discovery cannot be made a part of the appellate record or the trial court, after proper request, refuses to make it part of the record. *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding); *Walker*, 827 S.W.2d at 843. Appellate courts must consider whether the benefits of mandamus review outweigh the detriments when determining whether appeal is an adequate remedy.

4

*In re BP Prods. N. Am., Inc.*, 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding). If a trial court erroneously orders privileged matters to be disclosed, there is no adequate remedy at law, and mandamus is the proper remedy. *See Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995); *Walker*, 827 S.W.2d at 843.

**Privileges**

Harco asserts that the trial court clearly abused its discretion by finding that its documents were discoverable pursuant to the exceptions to the attorney-client and work product privileges enumerated within Texas Rules of Evidence Rule 503(d)(1), (3), and (5). *See* Tex. R. Evid. 503(d)(1), (3), (5). Fisher, on the other hand, contends that the trial court did not abuse its discretion by determining the documents were discoverable or by producing the documents to her.

To establish a privilege, a party must plead the particular privilege, produce evidence to support the privilege through affidavits or testimony, and produce the documents themselves if the trial court determines an *in camera* review is necessary. *See* Tex. R. Civ. P. 193.3(a); *Peeples v. Hon. Fourth Supreme Judicial Dist.*, 701 S.W.2d 635, 637 (Tex. 1985) (orig. proceeding). Once the party resisting discovery establishes a prima facie case that the documents are privileged, the burden shifts to the discovering party to refute the privilege claim. *See Marathon Oil Co. v. Moye*, 893 S.W.2d 585, 591 (Tex. App.—Dallas 1994, orig. proceeding).

**A. Attorney-Client Privilege**

The attorney-client privilege protects from disclosure confidential communications between client and counsel made for the purpose of facilitating the rendition of legal

services.  *See* Tex. R. Evid. 503(b); *Huie v. DeShazo*, 922 S.W.2d 920, 922 (Tex. 1996); *Arkla, Inc. v. Harris*, 846 S.W.2d 623, 629 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding).  This privilege attaches to the complete communication between attorney and client, including legal advice and facts therein.  *Marathon Oil Co.*, 893 S.W.2d at 589.  The subject matter of the information communicated is irrelevant when determining whether the privilege applies.  *Id*.

The attorney-client privilege applies only to communications intended to be confidential between the attorney and the client and made for the purpose of facilitating the rendition of legal services for the client.  *See* Tex. R. Evid. 503(b); *Arkla, Inc.*, 846 S.W.2d at 629.  A communication is "confidential" if it is not intended to be disclosed to third persons other than those persons to whom disclosure is made "in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."  Tex. R. Evid. 503(a)(5).  If a matter for which a privilege has been asserted has been disclosed to a third party, the party asserting the privilege has the burden to prove that no waiver occurred.  *Arkla, Inc.*, 846 S.W.2d at 630.

## B.  Work product privilege

Rule 192.5 defines work product as:

> (1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents; or

> (2) a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents.

6

Tex. R. Civ. P. 192.5(a).

Rule 192.5 encompasses different levels of protection for two types of work product. First, core work product is defined as "the work product of an attorney or an attorney's representative that contains the attorney's or the attorney's representative's mental impressions, opinions, conclusions, or legal theories," and it is not discoverable. *See* Tex. R. Civ. P. 192.5(b)(1). Second, any other work product is discoverable only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable, without undue hardship, to obtain the substantial equivalent of the material by other means. Tex. R. Civ. P. 192.5(b)(2).

Rule 192.5(b)(2) precludes discovery of an attorney's work product. *Id*. The work product exemption protects the attorney's mental processes, conclusions, and legal theories from discovery by another party, thereby providing a privileged area where the attorney can analyze and prepare the case. *Marathon Oil Co.*, 893 S.W.2d at 589. The work product exemption extends both to documents actually created by the attorney and memoranda, reports, notes, or summaries of interviews prepared by other individuals for the attorney's use. *Id*.

**C. Discussion**

Fisher contends that Harco failed to present sufficient prima facie proof of privilege; therefore, the burden never shifted to her to prove an exception to the work product or attorney-client privileges. However, at the evidentiary hearing on Harco's motion for a protective order, Harco offered affidavits by Charles Shriver, II and Craig Kennedy along

7

with other exhibits in support of its assertion of privilege. The prima facie standard requires only the minimum quantum of evidence necessary to support a rational inference that the allegation of facts are true. *See In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 225 (Tex. 2004) (orig. proceeding); *Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex. 1994) (orig. proceeding); *In re Maher*, 143 S.W.3d 907, 913 (Tex. App.—Fort Worth 2004, orig. proceeding).

Additionally, a review of the documents themselves may constitute sufficient evidence to make a prima facie showing of attorney-client or work product privilege. *See E.I. DuPont*, 136 S.W.3d at 223; *Humphreys*, 888 S.W.2d at 470. We have reviewed the documents and have determined that Harco 00066 and Harco 00548–00551, correspondence between Harco and its reinsurer American Re-Insurance Co., do not fall within any of the discovery privileges asserted by Harco. Accordingly, the trial court did not abuse its discretion by ordering the production of Harco 00066 and Harco 00548, and any relief requested as to these documents is denied.

But, it is evident from our review of Harco 00024, Harco 00057, Harco 00058–00065, Harco 00069-00081, Harco 00083, Harco 00096–00097, Harco 00098–00099, Harco 00143, Harco 00197–00200, Harco 00264, Harco 00442, Harco 00451–00454, Harco 00457–00480, Harco 00522–00531, Harco 00549–00551, Harco 00576–00577, Harco 00639, Harco 00657, and Harco 00664–00673 that these documents, which are primarily comprised of memoranda, claims and damages summaries, and case evaluations, meet all the requirements of the attorney-client or attorney work product privileges. *See* Tex. R. Evid. 503(b); *Arkla*, *Inc.*, 846 S.W.2d at 629;

8

*see also Nat'l Tank Co. v. Brotherton*, 851 S.W.2d 193, 200 (Tex. 1993) (orig. proceeding); *Nat'l Union Fire Ins. Co. v. Valdez*, 863 S.W.2d 458, 460 (Tex. 1993) (orig. proceeding); *Coats v. Ruiz*, 198 S.W.3d 863, 875–76 (Tex. App.—Dallas 2006, no pet.). It is irrelevant that many of these documents were prepared in connection with the suit between Southwest International and Fisher rather than the underlying suit, since the work product privilege is of continuing duration. *See Owens-Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 751–52 (Tex. 1991) (orig. proceeding).

Once a party demonstrates the privilege applies, the burden then shifts to the party seeking production to prove that an exception exists. *See In re AEP Tex. Cent. Co*, 128 S.W.3d 687, 692 (Tex. App.—San Antonio 2003, orig. proceeding); *In re Monsanto*, 998 S.W.2d 917, 933–34 (Tex. App.—Waco 1999, orig. proceeding); *Marathon Oil*, 893 S.W.2d at 589–90; *Cigna Corp. v. Spears*, 838 S.W.2d 561, 569 (Tex. App.—San Antonio 1992, orig. proceeding); *Freeman v. Bianchi*, 820 S.W.2d 853, 861 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding). Accordingly, because the documents listed above are privileged, Fisher was required to prove the existence of an exception to the privilege. *See In re AEP Tex. Cent. Co*, 128 S.W.3d at 692; *In re Monsanto*, 998 S.W.2d at 933–34; *Marathon Oil*, 893 S.W.2d at 589–90; *Cigna Corp.*, 838 S.W.2d at 569; *Freeman*, 820 S.W.2d at 861.

**503(d) Exceptions**

Fisher argues that, even if Harco met its burden of proof regarding the asserted privileges, the documents fall within the crime-fraud or breach of duty exceptions and,

therefore, the documents are discoverable. *See* Tex. R. Evid. 503(d)(1), (3) (explaining crime fraud and breach of duty exceptions).

## A. Crime-Fraud Exception

Fisher first contends that the documents fall within the crime-fraud exception. *See id.*

Texas Rule of Evidence 503(d)(1) provides that material otherwise protected by the attorney-client privilege is discoverable if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud. *See id.*; *see also Granada Corp. v. First Court of Appeals*, 844 S.W.2d 223, 227 (Tex. 1992) (orig. proceeding). The crime-fraud exception applies only if (1) the party asserting it establishes a prima facie case of contemplated fraud and (2) there is a relationship between the document for which the privilege is challenged and the prima facie proof offered. *See Granada*, 844 S.W.2d at 227; *Warrantech Corp. v. Computer Adapters Servs., Inc.*, 134 S.W.3d 516, 527 (Tex. App.—Fort Worth 2004, no pet.).

The prima facie requirement is met when the proponent offers evidence establishing the elements of fraud and that the fraud was ongoing, or about to be committed at the time the document was prepared. *See In re AEP Texas Central Co.*, 128 S.W.3d at 692; *Cigna Corp.*, 838 S.W.2d at 569. Mere allegations of fraud are not sufficient. *In re AEP Texas Central Co.*, 128 S.W.3d at 692; *Cigna Corp.*, 838 S.W.2d at 569; *In re Monsanto Co.*, 998 S.W.2d at 933–34. Similarly, the fact that the plaintiff's cause of action involves fraudulent conduct is also insufficient. *Cigna Corp.*, 838 S.W.2d at 569. The fraud alleged to have

occurred must have happened at or during the time the document was prepared, and the document must have been created as part of perpetrating the fraud. *Id*. The trial court must make findings both that the prima facie case has been established and that a nexus exists between the document at issue and the alleged fraud. *See Granada Corp*., 844 S.W.2d at 227; *Freeman*, 820 S.W.2d at 861–62. The nexus must be established for each privileged document. *See Freeman*, 820 S.W.2d at 861.

Fisher contends that she established a prima facie case of fraud because the evidence clearly establishes that adjuster David Leary attempted to fraudulently conceal the existence of the $10,000,000 umbrella policy. Specifically, Fisher argues that the evidence establishes that Leary did not disclose the existence of the umbrella policy to Charles Shriver, the attorney Harco retained to represent Southwest International Trucking in the suit brought by Fisher. Fisher notes that although Southwest International supplemented its disclosure responses five times, the disclosure responses never disclosed the existence of the umbrella policy, and Leary never corrected Southwest International's responses to the disclosure requests. Fisher also states that Leary had an opportunity but nonetheless failed to disclose the umbrella policy during mediation when she demanded $900,000, which was clearly in excess of the $500,000 primary limits.

Fisher claims that, to the extent that any of the documents at issue here relate to Leary's valuation of the underlying case or the basis of his valuation, the documents were part of the ongoing fraudulent concealment. However, neither the mere allegation of fraud, nor the fact that a party's cause of action includes fraudulent conduct is sufficient to establish a prima facie case of contemplated fraud. *See Cigna Corp*., 838 S.W.2d at 569;

11

*In re Monsanto Co.*, 998 S.W.2d at 933–34. Fisher's "evidence" demonstrating that Harco's adjuster failed to advise Shriver of the existence of the umbrella policy is primarily Fisher's own allegations of fraud against Harco, which serve as the basis of her lawsuit. Such a demonstration will not serve as a basis for the application of the crime-fraud exception. *See Cigna Corp.*, 838 S.W.2d at 569. Further, even if we were to take Fisher's evidence into consideration, it does not show that Shriver's services were sought to aid Leary in committing or planning to commit a crime. *See Granada Corp.*, 844 S.W.2d at 227. In fact, Fisher herself stated that Leary had never informed Shriver of the umbrella policy.

The crime-fraud exception requires the discovering party to *establish* a connection between the *particular documents* sought and the fraud alleged. *See Granada Corp.*, 844 S.W.2d at 227; *Freeman*, 820 S.W.2d at 861–62. Moreover, the fraud alleged to have occurred must have occurred at or during the time the document was prepared and in order to perpetuate the fraud. *See Coats*, 198 S.W.3d at 876; *Cigna Corp.*, 838 S.W.2d at 569. As Fisher has not established a prima facie case that the crime-fraud exception applies to the documents protected by the attorney-client privilege, we conclude that the trial court abused its discretion by ordering Harco to produce them on the basis of this exception.

## B. Breach of Duty Exception

Fisher generally contends that any documents Harco, through Leary, had the opportunity to disclose to attorney Shriver about the existence of the umbrella policy would fall within the breach of duty exception. Texas Rule of Evidence 503(d)(3) provides that

a communication, otherwise protected by the attorney-client privilege, is discoverable if the communication is relevant to an issue of breach of duty by a lawyer to the client or by a client to the lawyer. *See* Tex. R. Evid. 503(d)(3); *Brown v. Green*, 302 S.W.3d 1, 9 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Vinson & Elkins v. Mornan*, 946 S.W.2d 381, 394 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd). Nothing in the record before us indicates that Fisher was ever represented by any of Southwest International's or Harco's attorneys. Thus, we agree with Relator that the breach of duty exception found in rule 503(d)(3) does not apply in this case. Accordingly, the trial court abused its discretion by ordering Harco to produce the documents pursuant to this exception.

## C. Joint Defense Exception

Fisher does not argue, and the record does not indicate, that Harco's documents were discoverable pursuant to the joint defense exception. *See* Tex. R. Evid. 503(d)(5) ("As to a communication relevant to a matter of common interest between or among two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between or among any of the clients."). Thus, we conclude that this exception does not apply. *See Marathon Oil Co.*, 893 S.W.2d at 592. Accordingly, to the extent the trial court ordered Harco to produce the documents pursuant to this exception, the trial court abused its discretion.

## Conclusion

Because the documents do not fall within any of the exceptions, we hold that the trial court clearly abused its discretion by ordering the production of the following documents protected by the attorney-client or work product privileges: Harco 00024, Harco

13

00057, Harco 00058–00065, Harco 00069-00081, Harco 00083, Harco 00096–00097, Harco 00098–00099, Harco 00143, Harco 00197–00200, Harco 00264, Harco 00442, Harco 00451–00454, Harco 00457–00480, Harco 00522–00531, Harco 00549–00551, Harco 00576–00577, Harco 00639, 00657, and Harco 00664–00673. We conditionally grant mandamus relief as to the documents listed above. The writ will issue only if the trial court fails to (1) vacate its September 10, 2009 order and its September 25, 2009 letter ruling as to the documents listed above, (2) order the return of all originals and copies of the privileged documents provided to Debra Fisher by the trial court, and (3) issue such orders as necessary to prevent the use and dissemination of the privileged documents and information contained therein. We have reviewed the remaining documents, Harco 00066 and Harco 00548–00551, and have determined that they do not fall within any of the discovery privileges asserted by Harco. Accordingly, the trial court did not abuse its discretion by ordering the production of Harco 00066 and Harco 00548–00551. As to these documents, this court's October 9, 2009 stay is hereby lifted and any relief requested is denied.

BOB MCCOY<br>JUSTICE

PANEL: LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DELIVERED: June 24, 2010